# New York Supplement

## VOLUME 101,

AND

# New York State Reporter,

## VOLUME 135.

---

### KUHN v. KNIGHT, Mayor, et al.

(Supreme Court, Appellate Division, Fourth Department. November 21, 1906.)

1. STREET RAILROADS—ESTABLISHMENT—CONSENT OF MUNICIPALITY—PUBLIC OFFICERS—STATUTES.

Railroad Law, Laws 1901, p. 1229, c. 494, § 93, providing that in cities of the first class consent to operate a street railroad must be sold at public auction, "but nothing herein contained shall be construed as superseding * * * any provision * * * or affecting the terms of a certain con tract" between a certain city of the first class and its street railroad cor porations, requires the sale at public auction of a street railroad franchise in such city in any case in which the contract referred to does not permit of an exception.

2. APPEAL—RECORD—CERTIFICATE OF EVIDENCE—PRESUMPTION.

Where, on appeal from a judgment dismissing a proceeding to have declared void a street railroad franchise and enjoining the parties from proceeding thereunder, there is no certificate that the case contains all the evidence, it must be presumed that the finding of the Trial Court that the franchise was an extension of a line owned by defendant was correct.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 2916.]

3. STREET RAILROADS—ESTABLISHMENT—CONTRACT BETWEEN PARTIES—EXTENSION—PUBLIC AUCTION.

A contract between a city and its street railroad corporations provided for the settlement of existing controversies, required a payment of a fixed percentage of gross earnings, stipulated for one fare over all lines, and confined its operation to lines built or authorized to be built, "excepting that its * * * provisions may be extended to any future extensions thereof" by action of the common council and mayor and written consent of the parties. *Held* to authorize the city authorities, in a bona

101 N.Y.S.—1

fide exercise of their discretion, to grant an extension of a line to one of the companies without a sale of the franchise at public auction.

4. STATUTES—LOCAL LAWS—RATIFICATION OF CONTRACT BETWEEN CITY AND STREET RAILROADS—CONSTITUTIONALITY.

Const. art. 3, § 18, prohibits local bills granting rights to lay or operate railroad tracks. A contract between a city and its street railroads provided that the city authorities might extend its provisions to any extension of the lines of the companies. Laws 1892, p. 311, c. 15, declared that such contract was "ratified and confirmed," and that all its provisions were of binding effect. *Held* a valid grant of power to the city officers, rather than a grant of a right to lay railroad tracks in violation of the constitutional provision.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 85.]

Appeal from Special Term, Erie County.

Proceeding by Charles Kuhn against Erastus C. Knight, as mayor of the city of Buffalo, the International Railway Company, and others, to have declared void a grant by the city giving the defendant street railway company authority to construct a street railroad, and to enjoin such defendant from exercising any privileges granted thereunder. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

See 99 N. Y. Supp. 986.

The action was commenced on the 29th day of December, 1905, for the purpose of having it adjudged that a certain resolution or grant passed by the common council of the city of Buffalo, which purported to give permission to the defendant railway company to construct, extend, and operate an electric railroad in certain streets of the city, is void; also to enjoin the defendant railway company from exercising any of the privileges given by said resolution. It was also sought to restrain the city of Buffalo, its commissioner of public works, and the park commissioners of said city from doing or permitting any act in furtherance of or which would give effect to such resolution or grant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

William Burnet Wright, for appellant.
Porter Norton, for respondent railway company.
Samuel F. Moran, for other respondents.

McLENNAN, P. J. Upon the merits this case involves a determination of the question: May the city of Buffalo by action of its local authorities grant a franchise or permission to the defendant railway company to extend its lines, and for that purpose to construct, maintain, and operate a street surface railroad in certain streets of said city without requiring or providing that such franchise, grant, or permission be sold at public auction to the highest bidder in accordance with the provisions of section 93 of the railroad law (Laws 1901, p. 1229, c. 494)? The question must be answered in the negative, unless the provisions of the "Milburn Agreement," so called, rendered such sale unnecessary, and also unless such agreement was legally ratified by the Legislature. Section 93 of the railroad law must be construed to mean that in all cities of the first class, of which the city of Buffalo is one, such franchises or grants must be sold at public auction to the highest bidder, regardless of the population of such cities, and that such requirement applies to the city of Buffalo, unless the Milburn

agreement permits an exception to be made in a case like the one at bar. Section 93 of the railroad law provides, in substance, that in all cities of the first class the consent given by the local authorities for a franchise to operate a street surface railroad in any street, avenue, park, or public place must require the same to be sold at public auction to the highest bidder, except that in the section it is provided:

"But nothing herein contained shall be construed as superseding, repealing or modifying any provision * * * or affecting the terms of a certain contract bearing date January 1st, 1892, entered into by and between the city of Buffalo and the various street surface railroad corporations therein named in such contract, except that the provisions of this act as amended, which continue and confirm the consents of local authorities shall apply to street surface railroads in the city of Buffalo, as well as in other cities of the first class."

The contract referred to in such act concededly was the Milburn agreement.

Did the Milburn agreement, so called, relieve the local authorities of the city of Buffalo from the obligation of selling the franchise in question at public auction and to the highest bidder? The conditions which led to the making of the Milburn agreement should be understood in order that its true meaning may be ascertained. This could be no more concisely stated than in the preamble to such agreement. Practically it was recited that the conditions in the street car service had become intolerable in the city of Buffalo; that certain corporations had been given franchises without restriction as to the charge which might be exacted for the carriage of passengers, and that as to all no obligation had been imposed as to the transfer of passengers from one line to the other; that some of such corporations had paid nothing and were under no obligation to pay anything for their franchises; that others of them were under obligation to pay more than their net earnings; that the street surface railroad business was in confusion, to the serious detriment of the public, as well as of the interests of the railroad companies. The result was the Milburn agreement. So far as important to note for the purposes of this appeal, it provided for the settlement of all existing controversies between the city of Buffalo and the several street railroad companies mentioned therein. It canceled all bids and agreements which had theretofore been made as the purchase price of franchises, and provided that, in lieu thereof, certain fixed percentages should be paid upon the gross earnings of the railroad companies, parties to such agreement, and, in addition and among other things, provided that all should carry passengers over any and all of their lines for one fare. The contract then provided:

"This contract shall bind the successors and assigns of the parties hereto, and is to be confined in its operation to the street railroads owned by said companies now built or authorized to be built, excepting that its operation and its terms and provisions may be extended to any future extensions thereof by mutual consent of the parties hereto, expressed in the form of a resolution of the common council approved by the mayor as to any particular extension and a written consent of the companies filed with the city clerk."

The learned Trial Court has found, and we think the evidence fairly justified the conclusion, that the franchise in question constitutes an extension of the railroad owned and operated by the defendant com-

pany, resulting from the consolidation of two of the companies parties to the Milburn agreement. At all events, there being no certificate to the effect that the case contains all the evidence, we are bound to presume that the finding was supported by sufficient evidence. By the express terms of the Milburn agreement, it was provided that by the mutual consent of the parties thereto "its terms and provisions may be extended to any future extensions." That provision of the agreement must be deemed reasonable, and therefore within the contemplation of the parties. Otherwise a proposed "extension" of a line of one of the contracting parties could be practically prevented by a corporation which might bid a sum largely in excess of the value of the franchise, and without regard to the efficiency of the railroad system as a whole. We think the parties to the Milburn agreement did not intend that, if the line or lines of any one of the railroad companies which were parties to it were to be extended, such company would be compelled to enter into competition with another corporation for the right to make such extension, especially when the local authorities did not deem such competition necessary in order to serve the best interests of the city. The language of the agreement is not to the effect that the local authorities must grant such extension, but that they may. Not that they must grant a franchise without the requirement of sale at public auction, but that they may; and, if they do so, presumably it is because the interests of the city may be better served by the imposition of other conditions assumed by the grantees of such franchise.

We conclude that under the provisions of the Milburn agreement, if duly approved by the Legislature, the local authorities of the city of Buffalo were permitted to grant an extension of the lines owned by any of the companies parties to such agreement, and to permit such companies or their successors to construct, maintain, and operate their railroads in streets constituting such extension without selling such grant or franchise at public auction to the highest bidder, where the good faith of such authorities in such action is not in question. Presumably the city authorities in granting the franchise in question acted for the best interests of the city, and, their action in the premises not being challenged on the ground of fraud or because of faithlessness in the performance of their duty, this court ought not to be in the attitude of seeking means to thwart their purpose and intention.

The Legislature assumed to ratify and approve the Milburn agreement by chapter 151, p. 311, Laws 1892, which is as follows:

"The contract bearing date January first, eighteen hundred and ninety-two, and executed on the nineteenth day of January, eighteen hundred and ninety-two, made and entered into by the city of Buffalo with the Buffalo Railway Company, the Crosstown Street Railway Company of Buffalo, and the West Side Street Railway Company, which adjusts the differences previously existing between said city and said companies, is hereby in all things ratified and confirmed, and all the provisions of said contract are hereby declared to be of full force and binding effect; and the railway companies named as aforesaid are relieved from the payment to the city of Buffalo of all percentages of their gross receipts per annum except those provided for and reserved in and by such contract."

It is contended that such act is void because violative of section 18, art. 111, of the Constitution of the state of New York, in that it was a

local bill and granted the right to certain railroad corporations to lay down, maintain, and operate their tracks in the streets of a particular municipality.

The Milburn agreement, which the act in question assumes to ratify, did not authorize any railroad company or companies to lay tracks or maintain and operate a railroad in any of the streets of the city of Buffalo. The act, so far as applicable to the questions involved in this case, simply said such railroad companies may lay down tracks in such streets and maintain and operate a railroad thereon, provided the local authorities of the city of Buffalo shall consent thereto. We think it was within the province of the Legislature to have conferred such power upon the local authorities of the city of Buffalo.

We conclude that the grant, franchise, and permission given by the local authorities of the city of Buffalo to the defendant railway company to extend, maintain, and operate its railroad upon the streets, avenues, and parks of said city mentioned in the resolution of the common council referred to was within the power of such authorities to grant, and that there being no question of fraud raised, or as to their good faith in the premises, their determination should be regarded as final.

The conclusion reached upon the merits renders it unnecessary to consider the many other questions raised by the appellant upon this appeal.

We conclude that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

